Catherine H. HITCHCOCK, Appellant,

v.

PETER KIEWIT & SONS COMPANY, INC., Appellee.

No. 72-1609.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 28, 1973.

Decided June 19, 1973.

Rehearing Denied July 27, 1973.

**1258**

William B. Rogers, Oklahoma City, Okl., for appellant.

Gene Stipe, Oklahoma City, Okl. (Carl Hughes, Oklahoma City, Okl., with him on the Brief), for appellee.

Before SETH and BARRETT, Circuit Judges, and TALBOT SMITH, Senior District Judge*.

SETH, Circuit Judge.

Appellant, plaintiff below, appeals from a judgment of the district court entered on a jury verdict in her favor in the sum of $829.16 as damages in a diversity suit against appellee for a breach of contract.

Appellee, which is engaged in the business of highway construction, entered into a contract with appellant under the terms of which appellee was to remove certain quantities of sand from the appellant's property or pay a minimum amount. After the sand had been removed, the contract required appellee to slope the land toward a creek running through the property so that the land would drain properly, and to replace the topsoil.

Appellee removed the sand and paid for it according to the terms of the contract. However, several attempts by appellee to grade the land and replace the topsoil failed to satisfy appellant and she brought this suit seeking damages in the sum of $32,950.00. This was the amount alleged by her to be necessary to put the property into the condition called for by the contract. As mentioned, the jury found in favor of appellant, but awarded only $829.16 as damages.

Mrs. Hitchcock on this appeal asserts that the trial court committed error in that it applied the wrong measure of damages, and did not permit appellant to develop her theory of the case as it related to the principal purpose of the contract.

Very early in the trial, and during the testimony of a witness, the court read portions of the syllabus and opinion of the Oklahoma Supreme Court to the jury. The opinion is in Peevyhouse v. Garland Coal & Mining Co., Okl., 382 P.2d 109. Other than the fact that it involved strip mining for coal instead of mining for sand, Peevyhouse is very similar to the instant case. In Peevyhouse, the Oklahoma Supreme Court agreed that grading the land and replacing the topsoil were provisions merely "incidental" to the main purpose of the contract there in issue, and because of this allowed as damages only the diminution in value of the property. The court also said in the opinion that had the restoration work been one of the main purposes of the contract the cost of completion of such work would have been the proper measure of damages.

Although in the instant case it appears that the question of whether the work was an "incidental" or "main" purpose of the contract was indirectly submitted to the jury, the trial court, by reading from Peevyhouse with the admonition that it was binding, gave the jury the impression that the Oklahoma Supreme Court had already decided that the provisions in question were "incidental" as a matter of law, and that they could not be a "main" purpose of the contract.

At this early point, the trial court also seemed of this opinion. However, appellant's counsel objected to this interpretation of Peevyhouse, and the court took a recess, apparently to study the case. Immediately after the recess, the trial court once more read from Peevyhouse,

* Of the Eastern District of Michigan, sitting by designation.

this time attempting to explain to the jury that provision of the case which requires that the owner of the land be awarded the cost of completion of the uncompleted work as damages, if those costs are not grossly disproportionate to the economic benefit to be gained by such full performance, once more apparently assuming that there was no question but what the provisions in issue were "incidental" as opposed to "main" purposes of the contract. The trial court then allowed testimony regarding what it would cost to complete the work called for by the contract, and left undone by the appellee.

■ At no time does it appear that the jury was told that even though Peevyhouse was to be followed if applicable, it was their duty to determine whether the provisions relative to sloping the land and replacing the topsoil were "main" purposes of the contract here concerned, or merely "incidental." They were only told that if they found that the provisions were incidental, they were to apply the rule as to damages set forth in Peevyhouse. Thus the jury never decided this question. The court seemingly read Peevyhouse to them as having made that determination as a matter of law. The result of the injection of the state court opinion into the case as a direct instruction to the jury resulted inadvertently in taking from the jury the determination of whether or not the restoration of the land surface was incidental to the agreement or not. This is a fact question for the jury.

A careful reading of the transcript convinces us that there was at least a strong probability that the jury thought that they were foreclosed from deciding this issue because of the Oklahoma Supreme Court's decision in Peevyhouse. Further remarks regarding the Peevyhouse rule and the instructions to the jury, adequate in themselves, were not clear enough and unequivocal enough to clear up the initial misdirection.

■ Additionally, we believe that Mrs. Hitchcock should have been allowed to testify as to the negotiations surrounding the execution of the contract, and her intent in entering into it. This testimony, though normally inadmissible, is admissible in this case as an exception to the parole evidence rule since the contract does not reveal whether the provisions in question were considered to be "main" purposes or merely "incidental" purposes, and the jury must decide this question. The use of the word "consideration" on several different occasions with a different meaning added to the confusion.

Since it is necessary to remand this case for a new trial, it is not necessary in our view to discuss points (d), (e) and (f), except to say that we expect that any confusion which might have occurred because of the pretrial order in the original trial will, we trust, be cleared up before this case is retried.

Reversed and remanded for a new trial.